## FRUCHTMAN v. HEWES & POTTER, Inc.

District Court, S. D. New York.

July 11, 1935.

Kenyon & Kenyon, of New York City (Douglas H. Kenyon, of New York City, of counsel), for plaintiff.

Alexander C. Neave, of New York City (Charles F. Perkins, of Boston, Mass., of counsel), for defendant.

KNOX, District Judge.

Defendant is here charged with infringement of claims 3 and 4 of plaintiff's United States letters patent No. 1,379,256 for improvements in neckties and method of making the same. The invention has to do primarily with the lining or filling material of an ordinary four-in-hand necktie, and its combination with the fabric facing of the tie. At the time the patent was issued, May 24, 1921, the lining materials of neckties were commonly composed of flat pieces of canton flannel or some other light, soft cotton material. Their function was to give body and strength to the tie.

Plaintiff conceived the idea that if a tubular lining of soft material should be constructed within the tubular outer fabric of the tie, and that, if the edges of this fabric and that of the lining were united in the middle of the back of the tie by suitable stitching, thus leaving the balance of the lining to serve as a loose tubular structure, he would advance the art. Such is the basic thought of his patent. The accomplishment, as Fruchtman describes it in his testimony, is that the lining "distends the outer facing at all times and throughout the length of the lining, and for that reason it fits very well all throughout its entire length. It sort of pushes out and tends to keep the tie in place, and for that reason it is more successful than a flat lining."

Claims 3 and 4 read as follows:

"3. A necktie or the like comprising a piece of facing material sewed together along the median line of the rear thereof, the said facing having within it a piece of filling material whose edges are connected to each other and to the facing by the same stitches which connect the edges of the facing, substantially the entire remaining part of the said filling material being unsecured to the said facing material, so that the said filling material forms a loose, tubular structure within the said facing material.

"4. A necktie or the like comprising a doubled-over facing and a doubled-over piece of filling material therein, the four adjacent edges of the facing and the filling being connected to each other, substantially the entire remaining part of the said filling material being unsecured to the said facing material, so that the said filling material forms a loose, tubular structure within the said facing material."

The patent has not met with commercial success. It lay dormant for six years after issue. Within that period, plaintiff endeavored to have twenty or thirty manufacturers of men's neckwear adopt the lining, but to no avail.

One of the manufacturers so solicited was defendant. It disclaimed interest in the subject. In 1927, plaintiff organized a small company and sought to practice his invention. He found some outlet to the trade through the chain stores of G. R. Kinney Company and managed to dispose of 31,400 ties. The venture was not profitable, and after a year of effort was given up.

Defendant is a well-known neckwear manufacturer, and exploits its products by nation-wide advertising and otherwise, catering to a more or less high-class trade.

The tie claimed to infringe purports to be produced in accordance with Hall patent, No. 1,003,388, issued in 1931. This also calls for a lining tube within the tie fabric, but for some reason plaintiff's patent was not cited in the course of the proceedings looking to its issuance. One distinguishing feature of the latter grant is that it calls for a lining of resilient wool, to be cut on the bias, along the lines taught by Langsdorf patent, No. 1,447,090, February 27, 1923. Defendant's product carries a special stitching of the four edges of the lining and facing whereby they will, when the material is folded into tubes abut instead of forming a heavy, and possibly, ridgelike seam. In addition, defendant covers the inner portions of the tie, not occupied by the lining, with two silk or satin tippings, one at each end. These tippings are sewed firmly to the reverse side of the tie and are also firmly stitched to the lining. The latter thus has a security, together with a limitation of movement, that tends to differentiate it from the linings designed by plaintiff. The direct purpose, however, intended to be served by the tippings is to conceal the reverse side of the tie material, and to present a pleasing appearance to the eye of one examining or seeing the back of the tie.

Defendant, in attempting to differentiate its tie from that of plaintiff, argues that the court should be careful that it does not follow plaintiff's example, and put a false emphasis upon the "tubular" feature of the patent in suit. It is asserted that in the necktie art, "tubular" means nothing more than a piece of fabric folded upon itself. Attention is likewise directed to the circumstances that while the two edges of defendant's lining are held to the two edges of the tie fabric, in its rear median line, there is a marked distinction between this arrangement and the stitching of plaintiff's tie. In the former, the respective edges of both lining and tie fabric abut and do not overlap. This is brought about by a series of loop stitches which gives defendant's connecting means a flat appearance, together with a flexibility impossible of attainment by plaintiff's procedure. Furthermore, it is said, as has been seen, that defendant's lining is of resilient wool, cut on the bias, and this is quite different from a lining material "preferably made of a light thin material which is somewhat stiffer than the ordinary soft filling materials heretofore used."

Finally, the court is told that defendant's lining, by reason of its attachment to the tie tips, is not one wherein "substantially the entire remaining part of the filling material being unsecured to the said facing material * * * forms a loose tubular structure within the said facing material."

Notwithstanding all these considerations, plaintiff urges that defendant employs, directly or by equivalent, each and every element of his claims, and thus obtains the advantage of each, and therefore infringes.

For the purpose of decision, the validity of the patent in suit will be assumed. Discussion is thus narrowed to the issue of infringement.

When plaintiff sought his patent, claims 3 and 4 were not limited to a lining wherein "substantially the entire remaining part of the said filling material being unsecured to the said facing material, so that the said filling material forms a loose tubular structure within the said facing material."

As originally proposed, the claims were rejected on Frank patent, No. 1,215,319, which calls for a lining attached laterally and longitudinally to the tie facing. It was then that the above phraseology was added.

Whatever may be said of the ingenuity and novelty of the method claims of plaintiff's patent, there is some reason to doubt if his product claims possess much virtue unless they be limited to the precise structure disclosed. This is said for the reason that the necktie art is crowded, and it has long been common for four-in-hand ties, particularly of the better and more expensive grades, to be made with a ply of material of the same width and length of the tie facing, and to be turned upon itself so as to form a tubular inner member within the tie. Charvet et Fils, a Paris concern, of which John N. Woone, a witness at the trial, was American representative, imported ties of this character into the United States. They had an additional stiffening at the neckband. Subsequently, but some years prior to plaintiff's patent, such ties were manufactured and sold in this country. The evidence upon this state of the prior art is indisputable. Plaintiff seeks to discount this proof by saying that the tubular inner member within the prior art was not a filling material, foundation, or framework, in the sense of the lining of the patented structure. From

one standpoint, this is undoubtedly true. The fact yet remains that such linings were tubular, and that they gave a measure of strength and body, and perhaps some resiliency, to the tie in which they were used. All of this, in my opinion, requires plaintiff's product claims be construed narrowly. When read in conjunction with the method claims, and the specifications, the propriety of so construing the claims in suit becomes more apparent. The manner of manufacturing plaintiff's tie whereby the four edges of tie and lining are joined by a single line of stitches adapts it to quick and inexpensive production. This is an avowed purpose of the patent. Each of plaintiff's other objects, viz. a cravat "which shall slide through a turned-down collar * * * with a minimum of friction" and the use of a "filling material * * * sewn throughout its entire length to the face fabric of the article so that it will not shift when in use and bunch up so as to lessen the life of the article," can be attained in the lined or faced ties of the prior art. They are attained also by the ties alleged to infringe. But in the production of defendant's ties, low cost of manufacture, speaking relatively, of course, cannot be accomplished. While this feature of the case would not save defendant from infringement if plaintiff's claims were to be construed broadly, it is entitled to weight in making comparison between the two articles, and in appraising the inventive thought exhibited by plaintiff.

As summarized by defendant, the following differences between the two ties justify a finding of noninfringement, and I am inclined to agree.

Plaintiff's tie has a longitudinally rigid lining while that of defendant is longitudinally and transversely resilient. The former carries a lock stitch sewing machine seam sewn through four thicknesses of material; the latter has a thin flat seam which, by reason of the looped stitches, is resilient and flexible. Plaintiff's lining is shorter than the outer material, while that of defendant in conjunction with the tippings is of equal length. One ·is detached at both ends; the other is secured to the silk facing in such manner as to bear a fixed relation thereto. Lastly, such portion of the facing of plaintiff's tie as is unattached to the lining is free to stretch while defendant's tie is uniformly resilient throughout.

Plaintiff's bill is dismissed.